1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

RICKEY F.,

8
                 Plaintiff,

9
    v.

10
COMMISSIONER OF SOCIAL SECURITY,

11
                 Defendant.

12

CASE NO. C23-5327-BAT

**ORDER REVERSING THE COMMISSIONER'S FINAL DECISION**

13  Plaintiff seeks review of the ALJ's denial of his 2015 and 2019 applications for Disability

14 Insurance Benefits (DIB) and Supplemental Security Income.  He contends the ALJ

15 misevaluated the medical opinion evidence. Dkt. 10.  As discussed below, the Court

16 **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further

17 administrative proceedings under sentence four of 42 U.S.C. § 405(g).

18  **BACKGROUND**

19  Plaintiff is currently fifty-seven years-old, and has worked as shuttle driver, parking lot

20 attendant, and auto parts sales and route driver. [1]  Tr. 805.

21

22
23

---

[1] The administrative record contains inconsistent statements regarding Plaintiff's high school education and/or completion of a GED.  *See* Dkt. 10 at 14 n.4 (citing Tr. 904) (Plaintiff's testimony at July 2021 hearing before ALJ Jones that he did not complete high school or obtain a GED, but that he completed college classes while in prison); *cf.* Tr. 865 (Plaintiff testified in November 2022 before ALJ Ross that he has a high school diploma and three years of college).

1    This case has a lengthy procedural history dating back to 2011, some of which has

2    already been accurately set forth in the Honorable Theresa L. Fricke's prior August 2020 order

3    reversing and remanding ALJ Andrew Grace's April 2018 decision denying Plaintiff's 2015 DIB

4    and SSI claims.  *See* Tr. 1038-46 (Judge Fricke's order); Tr. 16-29 (ALJ Grace's April 2018

5    decision).  The Court therefore incorporates by reference the procedural history set forth in Judge

6    Fricke's prior order.  *See* Tr. 1039.

7    The instant appeal involves both Plaintiff's 2015 DIB and SSI applications at issue before

8    Judge Fricke, along with Plaintiff's subsequently filed July 2019 SSI and DIB applications (filed

9    while Plaintiff's appeal was pending before Judge Fricke).  *See* Tr. 927-74, 1383-89, 1391-97.

10   Following Judge Fricke's August 2020 order, the Appeals Council consolidated Plaintiff's 2015

11   and 2019 applications, holding that 2015 and 2019 applications were duplicative, and ordered the

12   ALJ on remand to "consolidate the claims files, associate the evidence, and issue a new decision

13   on the consolidated claims."  Tr. 1049.  ALJ Rebecca Jones held a hearing on July 15, 2021, and

14   in August 2021, ALJ Jones issued a partially favorable decision holding that Plaintiff became

15   disabled for purposes of his SSI and DIB claims on August 4, 2020, when his age category

16   changed to advanced, but that Plaintiff was not disabled prior to that date.  Tr. 891-942, 1073-74.

17   Subsequently, regional counsel for the Commissioner protested ALJ Jones' order to the

18   Appeals Council, arguing that ALJ Jones erred in finding Plaintiff disabled for DIB purposes as

19   of August 2020, because that date succeeded Plaintiff's March 31, 2020 date last insured

20   ("DLI").  Tr. 1291.  The Appeals Council agreed, reopened the case, and, in November 2021,

21   vacated ALJ Jones' August 2021 decision, reversing and remanding for another new hearing and

22   decision before an ALJ.  Tr. 1090.

23

1    In its November 2021 order, the Appeals Council concluded that ALJ Jones erred as a

2  matter of law when she found that Plaintiff was entitled to DIB benefits as of August 4, 2020.

3  Tr. 1090.  It also found that ALJ Jones erred because she failed to comply with Judge Fricke's

4  August 2020 remand order requiring further development of the record and reconsideration of

5  the medical opinion from Dr. Krystina Boyko.[2]  Tr. 1090-91 (citing Tr. 1045-46).  The Appeals

6  Council therefore remanded to the ALJ with instructions that the ALJ further develop the record

7  and consider Plaintiff's insured status and his DLI for purposes of his DIB claims.  Tr. 1092.  In

8  particular, the Appeals Council noted the "existence of [a] borderline age situation," such that the

9  ALJ was required to consider additional factors to determine whether a higher age category was

10  warranted given that Plaintiff was within a few months of reaching the older age category.  Tr.

11  1090, 1296.  The Appeals Council further ordered the ALJ to obtain additional evidence and

12  complete the record, to give further consideration to the medical source opinions, to reconsider

13  Plaintiff's RFC, and, if warranted, obtain evidence from a VE.  Tr. 1092-93.

14    The case was reassigned to ALJ Malcolm Ross, who conducted a hearing on November

15  22, 2022, and issued a partially favorable amended final decision on February 14, 2023.  Tr. 789-

16  808.  ALJ Ross found that Plaintiff had not engaged in substantial gainful activity ("SGA") since

17  his September 1, 2015 onset date.  Tr. 792.  At step two, the ALJ found that Plaintiff suffered

18  from the following severe impairments beginning in September 1, 2015:  degenerative disc

19  disease of the lumbar spine, osteoarthritis of the hips, obesity, diabetes mellitus, mild

20  osteoarthritis of the knee, chronic pain syndrome, and peripheral neuropathy.  Tr. 792.  As of

21  March 23, 2019, the ALJ found that, in addition to the above impairments, Plaintiff's major

22

23    ---

[2] Additionally, the ALJ found that ALJ Jones erred in failing to consider an April 2019 medical opinion from Dr. W. Kefron McCaw regarding Plaintiff's mental impairments.  Tr. 1091-92. That opinion is not at issue in this appeal.

depressive disorder also constituted a severe impairment.  Tr. 792.  The ALJ, however, found that Plaintiff's impairments and/or combination of impairments did not satisfy or equal the Listings.  Tr. 792.

Regarding Plaintiff's RFC, the ALJ found that from Plaintiff's September 1, 2015 onset date, through March 22, 2019, Plaintiff had the RFC to perform light work with additional postural, exertional, and environmental limitations.[3]  Tr. 797.  However, based on Plaintiff's mental impairments, beginning March 23, 2019, the ALJ additionally limited Plaintiff to simple, repetitive tasks; no public contact; and occasional, superficial contact with coworkers, but no teamwork.  Tr. 797-98.

The ALJ subsequently found that Plaintiff had been unable to perform any of his past relevant work since his September 1, 2015 onset date.  Tr. 805.  Relying on the testimony of a VE, the ALJ found that prior to August 4, 2020, when Plaintiff achieved advanced age, he was able to perform other jobs existing in significant numbers in the economy, including inspector and hand packager, small products assembler, and electrical worker.  Tr. 807.  The ALJ concluded that Plaintiff was not disabled prior to August 2020.  Tr. 807.

However, in considering Plaintiff's borderline age situation, the ALJ found that the age category regulations should be applied "nonmechanical[ly]" such that Plaintiff was deemed disabled as of March 31, 2020 – prior to his DLI – for purposes of his DIB claim only.  Tr. 808.

---

[3] The ALJ specifically found that Plaintiff required "a sit/stand option defined as the ability to change position after twenty to sixty minutes for three to five minutes while continuing work on his assigned task."  Tr. 797.  The ALJ further found that Plaintiff was limited to "occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling" and to "using a cane to walk."  Tr. 797-98.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 4

By contrast, as for Plaintiff's SSI claim, the ALJ found that Plaintiff became disabled on August 4, 2020, when he in fact achieved advanced age status.  Tr. 808.

## DISCUSSION

Plaintiff appeals the ALJ's finding that he did not become disabled for purposes of his DIB and SSI claims until March 31, 2020, and August 4, 2020, respectively.  Dkt. 10 at 4. Plaintiff contends that he has been limited to unskilled sedentary work since his September 1, 2015 onset date, and that such an RFC would have rendered him disabled.  Dkt. 10 at 4.

**A.    Medical Opinion Evidence**

Plaintiff challenges ALJ Ross' February 2023 evaluation of eight medical opinions regarding his physical impairments, including two opinions from treating physicians, two opinions from examining physicians, and four opinions from non-examining physicians.[4]

For claims filed before March 27, 2017, like this case, each of the three types of medical opinions—treating, examining, and non-examining—is accorded different weight. 20 C.F.R. §§ 404.1527, 416.927.  Generally, more weight is given to the opinion of a treating physician than

---

[4] Six of the eight opinions that Plaintiff now challenges were in existence at the time that ALJ Grace issued his 2018 decision, which was itself at issue on appeal before Judge Fricke. However, Plaintiff, who proceeded *pro se* in C19-5292 TLF, did not assign error to ALJ Grace's evaluation of those medical opinions.  *See* C19-5292 TLF, Dkt. 20 (Plaintiff's *pro se* opening brief); Dkt. 22 (Commissioner's brief construing issues raised by Plaintiff in opening brief); Tr. 1038 (Judge Fricke's order construing issues on appeal).  Nevertheless, in conjunction with the Court's evaluation of additional post-hearing evidence, Judge Fricke found that ALJ Grace erred when he failed to consider a November 2017 opinion from one of Plaintiff's treating physicians, Dr. Krystina Boyko.  Tr. 1044-45.  Judge Fricke, however, did not address the other five opinions existing opinions currently challenged now by Plaintiff on appeal, including the opinions from Dr. Taylor, Dr. Gaffield, Dr. Bulley, Dr. Palasi, and Dr. Martin.  However, given the scope of the Appeals Council's subsequent November 2021 remand order requiring ALJ Ross to reconsider *all* of the medical opinions and to further develop the record, this Court finds that adjudication of the previously unchallenged, existing medical opinions is appropriate.  *See* Tr. 1092 (Appeals Council's November 2021 order to the ALJ to "[g]ive further consideration to the treating and non-treating source opinions . . .  and to explain the weight given to such opinion evidence.").

to the opinion of a physician who did not treat the claimant. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When an ALJ gives a treating physician's opinion less than controlling weight, and the opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for rejecting or discounting the opinion, supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). By contrast, when a treating physician's opinion is contradicted by another physician, an ALJ must provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence. *Id.* Additionally, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and if the opinion is contradicted, the ALJ can reject the opinion only for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.; Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

      **1.**      **Opinions from Examining Physicians, Drs. Gary Gaffield and William Bulley**

The Court addresses first the challenged opinions from the examining physicians because its resolution subsequently affects the Court's review of additional challenged medical opinions.

      a.      *March 2016 Opinion from Consultative Examiner, Dr. Gary Gaffield*

In March 2016, following an examination of Plaintiff and a review of Plaintiff's medical records, Dr. Gaffield diagnosed Plaintiff with diabetes in "poor control," back pain, and right knee pain. Tr. 563. Dr. Gaffield opined Plaintiff was able to stand and walk for only four hours in an eight-hour day with breaks. Tr. 563. Dr. Gaffield further noted Plaintiff utilized a cane, which should be utilized on "a regular basis." Tr. 563. He opined Plaintiff could carry no more

than twenty pounds occasionally and ten pounds frequently, and that certain postural activities should be avoided due to his right knee, obesity, and back issues.  Tr. 563.  The ALJ afforded Dr. Gaffield's opinion "significant weight."  Tr. 803.

Plaintiff challenges the ALJ's treatment of Dr. Gaffield's opinion, arguing the ALJ's failure to include Dr. Gaffield's limitation of four hours of standing and/or walking in Plaintiff's RFC effectively amounted to a rejection of Dr. Gaffield's opinion.  Dkt. 10 at 9.  Plaintiff contends that such a limitation, combined with his use of a cane, would have rendered him limited to sedentary – as opposed to light – work.  Dkt. 10 at 9-10.  In support, Plaintiff notes the VE's testimony that he would not be able to perform the jobs referenced by the VE – including inspector packer, small products assembler, and electronics worker – if he were limited to four hours of standing and/or walking and if he required a cane to both stand and to walk, as Plaintiff testified he did.  *See* Tr. 882 (VE testimony that Plaintiff's use of a cane for standing would "eliminate the work" because the jobs "require[] two-handed operation," and "[i]f Plaintiff needed to hold a cane in one hand, [he] would not be able to do the work"); *see also* Tr. 873, 887 (Plaintiff's testimony that he requires his cane for balancing and standing in addition to walking).

The Commissioner concedes the ALJ, without explanation, failed to adopt Dr. Gaffield's standing/walking limitation, but contends that any error was harmless.  Dkt. 15 at 7.  In support, the Commissioner asserts the VE testified if Plaintiff required a cane solely for walking, he could still perform the referenced jobs even if he were limited to standing/walking for four hours.  *See* Tr. 881.  The Commissioner then asserts the ALJ properly found in conjunction with Plaintiff's RFC that he needs a cane "to walk," arguing that such a limitation was supported by Plaintiff's medical records even though Plaintiff testified to the contrary.  Dkt. 15 at 7.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 7

1    An ALJ does not have to incorporate every limitation outlined in a medical opinion, so

2  long as the ALJ offers an adequate explanation for the departure.  *See Betts v. Colvin*, 531 F.

3  App'x 799, 800 (9th Cir. 2013) (holding that an ALJ erred in "according 'the greatest weight' to

4  a medical opinion and subsequently "disregarding aspects ... [of the] opinion without providing

5  any explanation"); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)

6  (holding that an ALJ did not err in omitting certain limitations indicated by a medical opinion

7  because "[t]he ALJ's opinion explain[ed] the omission of [the claimant's limitations] from the

8  RFC finding").  Here, the ALJ failed to offer any explanation regarding his failure to include in

9  Plaintiff's RFC Dr. Gaffield's standing/walking limitation in spite of affording Dr. Gaffield's

10  opinion "significant weight," and in doing so, erred.  Tr. 803.

11    The Court cannot conclude the error was harmless for the reasons proffered by the

12  Commissioner because the ALJ similarly failed to offer any explanation or reasons for finding

13  that Plaintiff required a cane solely "to walk."  Tr. 798.  Notably, five years ago in 2018, prior to

14  Plaintiff's reaching advanced age and the subsequent "deterioration in [Plaintiff's] prior

15  functioning" recognized in 2023 by ALJ Ross, ALJ Grace found Plaintiff required a cane for

16  both standing and walking.  *See* Tr. 22 (ALJ Grace's findings regarding Plaintiff's RFC); Tr. 805

17  (ALJ Ross' decision).[5]  In his 2023 decision, ALJ Ross repeatedly states Plaintiff requires use of

18  a cane for "ambulation" or "walking" but fails to explain or address the evidence – including

19  Plaintiff's testimony – that Plaintiff also requires a cane for standing and balancing.  Tr. 798,

20  800; *see also* Tr. 798-805 (omitting discussion regarding Plaintiff's use of cane for standing and

21

22  _____

23  [5] The Court notes that ALJ Ross appears to mistakenly refer to ALJ Jones' August 2021 decision
instead of ALJ Grace's 2018 decision as the "prior decision on [Plaintiff's] disability
application."  Tr. 804.  However, ALJ Jones' decision never became final because it was
subsequently vacated by the Appeals Council on November 19, 2021.  *See* Tr. 1089.

balancing).  The Commissioner's *post hoc* rationalizations in support of the ALJ's unexplained cane limitation findings are insufficient.

Accordingly, remand is required for the ALJ to reconsider Dr. Gaffield's medical opinion and to reconsider Plaintiff's need for a cane to stand and/or balance in addition to walking.

> b. *January/February 2015 Opinion From Examining Physician, Dr. William Bulley*

In January 2015, orthopedic surgeon, Dr. Bulley, reviewed Plaintiff's medical records and examined Plaintiff in connection with his Department of Labor and Industries claim regarding the residuals of a 2014 work-related injury.  Tr. 463-76.  Dr. Bulley diagnosed lumbar strain, degenerative disc disease status post L5-SI discectomy in 2003, and obesity.  Tr. 471.  He opined that Plaintiff is able to drive, has a lifting restriction of thirty pounds, and should not stoop.  Tr. 471.  The ALJ gave Dr. Bulley's opinion "significant weight," construing it to state Plaintiff "could perform work at the light exertional level," which the ALJ found was consistent with Plaintiff's objective medical records.  Tr. 803.

Plaintiff argues the ALJ mischaracterized Dr. Bulley's opinion.  Plaintiff contends Dr. Bulley did not opine he was capable of light work as defined by Social Security regulations, noting Dr. Bulley did not address Plaintiff's ability to sit, stand, or walk.  Dkt. 10 at 10.  Plaintiff further contends the ALJ failed to include all the limitations assessed by Dr. Bulley.  Dkt. 10 at 10.  The Commissioner does not address Plaintiff's argument, agreeing only that Dr. Bulley opined that Plaintiff could lift up to thirty pounds and could not stoop.  Dkt. 15 at 5 (citing Tr. 471).

The Court agrees the ALJ erred in his characterization of Dr. Bulley's opinion as supporting light work because the opinion contained no such statement or suggestion.  *See* Tr. 463-76.  Accordingly, the ALJ is also required to reconsider Dr. Bulley's opinion on remand.

2.      **ALJ's Reliance on Examining Physicians, Drs. Gaffield's and Bulley's Opinions, in Evaluating Additional Medical Opinions**

The ALJ relied in large part on his misevaluation of Drs. Gaffield's and Bulley's opinions in rejecting the challenged opinions from Plaintiff's treating physician, Dr. Brianna Taylor, and non-examining consulting physician, Dr. Myrna Palasi. *See* Tr. 495-505 (Dr. Taylor's treating opinion that Plaintiff was limited to sedentary work); Tr. 554-57 (Dr. Palasi's DSHS reviewing opinion that Plaintiff was limited to sedentary work); Tr. 803 (finding that Dr. Taylor's opinion was "inconsistent with the opinions of multiple other opinions in the record, *including examining physicians who found [Plaintiff] had greater functional ability*") (emphasis added); Tr. 803-04 (finding that Dr. Palasi's opinion "is inconsistent with many other opinions, including the assessments of several other physicians who had the opportunity to examine [Plaintiff] in a clinical setting"). Given the Court's analysis above, these reasons were neither specific and legitimate, in the case of treating physician, Dr. Taylor; nor did they constitute sufficient reasons for rejecting non-examining physician, Dr. Palasi's opinion. *See Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998) (an ALJ is permitted to reject a non-examining medical opinion "by reference to specific evidence in the medical record").

Besides Drs. Gaffield and Bulley, the "other" physicians to whom the ALJ referred included state agency non-examining physicians, Drs. Martin, Platter, and Wolfe, who offered nearly identical opinions that Plaintiff was capable of light work. *See* Tr. 153-56, 169-71, 983-85, 996-98, 1012-14, 1026-28 (2016, 2019, and 2020 opinions from Drs. Martin, Platter, and Wolfe, respectively). However, these non-examining opinions did not themselves constitute substantial evidence that justified the rejection of Dr. Taylor's opinion. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)**.**

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 10

1    Nor do the ALJ's additional reasons constitute substantial evidence supporting the ALJ's

2    rejection of Drs. Taylor's and Palasi's opinions.  Tr. 803-04.  The ALJ's reasoning was both

3    vague and conclusory, and a review of "the ALJ's full explanation" in accordance with

4    *Kaufmann v. Kijakazi*, similarly fails to shed light on the medical evidence to which the ALJ

5    intended to reference in rejecting Drs. Taylor's and Palasi's opinions and in adopting the

6    opinions from the state agency physicians.  32 F.4th 843, 851 (9th Cir. 2022); *see also* Tr. 802-

7    05.  The Court declines to manufacture reasons or arguments to support the ALJ's evaluation of

8    Drs. Taylor's and Palasi's opinions – such as Plaintiff's alleged conservative treatment as

9    proffered by the Commissioner – where such reasons were not provided by the ALJ in evaluating

10   the medical opinions.[6]  *See* Dkt. 15 at 4, 6.

11       Accordingly, on remand, in addition to Drs. Gaffield's and Bulley's medical opinions, the

12   ALJ is also required to reconsider the medical opinions from Drs. Taylor, Palasi, Martin, Platter,

13   and Wolfe.

14       **3.    November 2017 Opinion From Treating Physician, Dr. Krystina Boyko**

15       Judge Fricke previously remanded based on ALJ Grace's failure to consider Dr. Boyko's

16   opinion, ordering that the record be developed to include a complete copy of the opinion.  Tr.

17   1044-48.  Dr. Boyko's complete opinion was subsequently added to the administrative record

18   and considered by ALJ Ross.  Tr. 2054-59.

19

20   _____

21   [6] To the extent that the Commissioner suggests that the Court should scrutinize the ALJ's
     decision for post hoc arguments, the Court, however, declines such a broad interpretation of
     *Kaufmann*, 32 F.4th at 851, because such review is not authorized under *Kaufmann* or any other

22   Ninth Circuit authority.  *See Makenzie M. v. Comm'r of Soc. Sec*., No. C22-5013-BAT, 2022 WL
     2817086, at *1 (W.D. Wash. July 19, 2022) (citing *Bray v. Comm'r of Social Sec. Admin.*, 554

23   F.3d 1219, 1225-26 (9th Cir. 2009)) (court reviews ALJ's decision "based on the reasoning and
     factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the
     adjudicator may have been thinking").

1    In November 2017, treating physician, Dr. Boyko opined, based on her treatment and

2  examination of Plaintiff, that Plaintiff suffered from moderate diabetes and severe back pain, and

3  that he was unable to meet the demands of sedentary work.  Tr. 2056-57.  The ALJ found Dr.

4  Boyko's opinion was entitled to little weight.  Tr. 804.  However, unlike the previously discussed

5  opinions, the ALJ did not reject Dr. Boyko's opinion based on its inconsistency with the

6  examining physicians' opinions and "other" medical opinions, but instead offered more specific

7  reasons based on medical evidence for rejecting Dr. Boyko's opinion.  *See* Tr. 804.  Specifically,

8  the ALJ noted Dr. Boyko's opinion was not based upon any spinal imaging and found that it was

9  inconsistent with the objective medical evidence.  Tr. 804.  In particular, the ALJ noted that

10  although Plaintiff used a cane and had positive straight leg tests, the objective medical evidence,

11  including imaging studies, nevertheless demonstrated Plaintiff suffered from only "mild to

12  moderate degenerative disc disease and mild facet arthropathy of the lumbar spine," "mild to

13  moderate osteoarthritic changes in the bilateral hips," "intact sensation and muscle tone, and . . .

14  only slightly decreased motor strength in the bilateral extremities."  Tr. 804.  Although Plaintiff

15  suffered from osteoarthritis of the knee, the ALJ further noted he could "perform heel and toe

16  walking without difficulty."  Tr. 804.  As for Plaintiff's peripheral neuropathy, the ALJ further

17  stated that the objective medical evidence showed "no focal deficits upon neurological

18  examinations."  Tr. 804.

19    Plaintiff argues the ALJ erred because his mild to moderate degenerative disc disease did

20  not mean he did not suffer debilitating back pain, and he further contends that the ALJ failed to

21  explain how Dr. Boyko's opinion was undermined by certain "normal findings."  Dkt. 10 at 7-8.

22  Plaintiff asserts the ALJ improperly substituted his interpretation of medical findings for those of

23  Dr. Boyko, whom he contends was better qualified to understand the findings.

1    The Court disagrees and finds the ALJ properly discounted Dr. Boyko's opinion based on

2    the ALJ's sufficiently detailed and supported findings regarding Plaintiff's physical impairments.

3    *See* Tr. 804.  It declines Plaintiff's request for an alternative interpretation of the evidence.

4    **B.    Remedy**

5    Plaintiff asks the Court to remand this case with instructions for an immediate award of

6    benefits.  Dkt. 10 at 14-15.  The Court may remand for an award of benefits where: (1) the record

7    has been fully developed and further administrative proceedings would serve no useful purpose;

8    (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

9    claimant testimony or medical opinion; and (3) if the improperly discredited evidence were

10   credited as true, the ALJ would be required to find the claimant disabled on remand.  *See*

11   *Garrison*, 759 F.3d at 1020.  Courts have flexibility in applying this rule and may instead remand

12   for further proceedings where the record as a whole "creates serious doubt that a claimant is, in

13   fact, disabled."  *Id.* at 1021.

14   While this case has a lengthy history, and the Court acknowledges that remand may

15   constitute yet another "bite at the apple" for the Commissioner, it nevertheless simultaneously

16   recognizes that Plaintiff did not previously challenge before Judge Fricke the prior ALJ's

17   evaluation of the opinions from Drs. Taylor, Palasi, Gaffield, Bulley, and Martin.  Accordingly,

18   this is the first time that those five opinions have been addressed on appeal, and the first time that

19   a court has remanded based on the ALJ's evaluation of those opinions.[7]

20   Moreover, the Court finds that not all the conditions for an award of benefits are met.

21   Although the record appears to have been fully developed and ALJ Ross failed to provide

22   sufficient reasons for rejecting multiple medical opinions regarding Plaintiff's physical

23

[7] As noted above, Drs. Platter and Wolfe issued their opinions following ALJ Grace's decision.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 13

impairments, it is not clear that even if the improperly rejected evidence were credited as true, an ALJ would be required to find Plaintiff disabled.  Rather, the Court finds that further administrative proceedings would be useful in order to allow the ALJ to reevaluate the improperly rejected evidence along with the rest of the evidence, and to reconsider Plaintiff's need for a cane.  Accordingly, remand for further administrative proceedings is the proper remedy.

<b>CONCLUSION</b>

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the medical opinions from Drs. Gaffield, Bulley, Taylor, Palasi, Martin, Platter, and Wolfe; the ALJ shall also reassess Plaintiff's need for a cane and explicitly address Plaintiff's need for a cane while standing and/or balancing; and the ALJ shall reassess Plaintiff's RFC, develop the record, and proceed to the remaining steps of the disability determination as appropriate.

DATED this 13th day of October, 2023.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge